courtroom session. We have two cases for oral argument this morning. Just, you're probably veterans, just an admonition to just please stay in the microphone so we can hear you as well. I know both of you know the rules about the lights, so I won't go over that, but please stay in the mic so we can hear you. All right, with that we'll call the first case, United States of America v. Ruel Hawkins. Mr. Perry. May it please the court, my name is Chris Perry, counsel for appellant Ruel Hawkins. It's easy in this case to become distracted by the moral issues, the incestuous sexual contact between an uncle and a niece. But our duty as judges and lawyers over the next 40 minutes is to discuss this case, focusing on the legal issues and put those moral issues aside. It's the case of two adults, non-blood related, and the issue in the case is whether there is a culpable mental state on the permission element of the abusive sexual contact statute, and if so, whether the evidence was sufficient to find beyond a reasonable doubt that Ruel Hawkins lacked the permission of JA. Let me ask, just out of curiosity, was Mr. Hawkins in the military? No, he was not in the military The reason this case invoked federal jurisdiction is because the property on which the sexual contact occurred was on Fort Hood. I was wondering if he had access to it because he was in the military. I don't think that, I think that the Belton Lake Recreation Area where it happened was just, happened to be on military property, and he lived in Killeen where Fort Hood is. The first issue I want to discuss, of course, is that there is a mens rea requirement on the permission element. This goes back to the landmark case of Morrissette v. United States, Justice Jackson's great opinion detailing the history of common law offenses, and even if the statute does not itself have a mens rea requirement on an element, the Supreme Court has a mens rea requirement on each element that criminalizes otherwise innocent conduct, and of course here, having sexual contact with somebody is innocent unless it was without that person's permission. Thus, there has to be a mens rea requirement on the permission element. This was reaffirmed in United States v. Excitement video, and the Supreme Court said that in the context of these common law crimes, common law crimes against a person or property, there has to be a center, a mens rea requirement on those elements that criminalize otherwise innocent conduct absent expressed contrary intent by the legislature, and that's important because if you look at the sexual abuse chapter in Title 18, you'll see that in the section right before 2244, in 2243, where they talk about statutory rape, there is no mens rea requirement on the age of the victim, and why is that? It's because Congress in 2243d expressly wrote the government does not need to prove a mens rea with respect to the age of the victim. So if Congress is explicitly putting in when there is no mens rea requirement, then we have to assume that when they don't explicitly put in their intent that there not be a mens rea, that there is one, and that goes back to the common law crime. Are you relying on this default principle that we read in a mens rea requirement, or are you also arguing that just looking at the statute on its own is a matter of interpreting the grammar of that sentence, that the knowingly requirement applies to the permission issue? Judge Costa, I believe that if you look at it on a pure grammarian level, you wouldn't get knowingly applying to the permission element, but that's the exact... It's a prepositional phrase. Yeah, if we were in an English class, the rules of proper grammar, absolutely, but if you turn... I think United States versus Excitement video is an instructive case on that because it's very tortured grammatical construction to get the knowing requirement on whether the visual depictions depicted child pornography. And then if you look at... I think Staples versus United States is another good case to look at because there's no mens rea at all in that statute on firearm registration, and yet even though there was no mental state at all, not even knowingly to... There's no knowingly at all in the machine gun registration statute, but the court still said you had to know your gun had automatic firing capability in order for you to be guilty of not registering a machine gun, and that's because it's innocent to own a firearm. Long history of that. In this case, if you look at the government's response, I think it's instructive too because the government does not really deal in its brief with the arguments that we make that are based on the Supreme Court precedent. The government instead relies on pattern jury instructions, and they rely on unpublished case law to get to the point that there is no mens rea on the permission element. But I've looked at all those unpublished cases cited by the government, and in none of those, they deal with the more set argument that there is a mens rea on each statutory element that criminalizes otherwise innocent conduct. I also think... I've already talked about 2243 and how that affects this analysis, but it's also... I want to direct the court's attention to the government's brief, page 21 at footnote 8. They also cite a statute 2423A, and that's a statute that deals with transporting minors for the purpose of prostitution in interstate commerce. I agree there is no mens rea in that statute on the age of the child victim, but that's because that element is not criminalizing otherwise innocent conduct. It's a crime to transport anybody, regardless of age, for the purpose of prostitution or any type of illegal sexual activity. You said your rule is if it's otherwise innocent conduct, and I understand there's consensual sex happening all the time, but in looking at the history... I mean, you said with the firearm ownership. The history of sexual assault offenses is that... It's a sordid history and an unfortunate history where there were requirements that the woman had to fight off her attacker and things like that, and there's been a big move towards modernizing rape statutes. And it seems to me this is... This sort of issue has been such a focus over the years of do they have to know about the consent? Does the woman have to resist? That you would have thought Congress would have maybe directly put something in there if they wanted this to be part of the mens rea requirement. Why wouldn't... How does that history inform the analysis we should do? Well, I think first I'll address kind of the modernization part. I don't believe that Congress has really modernized this statute since the movement has happened. I mean, this statute was last amended in 86, and while I'm a firm believer in the modernization movement that consent is not the absence of no but the presence of yes, that isn't in this statute. And I'm a firmer believer actually even than that that we have to uphold the law as it's written. And this statute, it does take out... The amendments in 86 do take out the requirement that when you use force, a victim has to be compelled by that force, because we don't want to have to look at the victim's conduct when force comes into effect. But when you... That's 2241, and I think most of the 28J material the government filed is about what we do in these force cases. And I think that, yeah, the legislature... Yes, the legislature made a really good decision in saying when force is used, we don't have to look at the conduct of the victim, because we don't want a victim to have to injure herself in order to later say it was rape. But I think we have to push that aside when it's not a force case, because we're not... Those concerns aren't there in non-force cases. What we have to look at here is whether... And I don't believe that these amendments change the law that there has to be a mens rea on the element that transforms otherwise innocent conduct into a criminal one. So for those reasons, I believe that the argument still stands, and especially under this statute that was passed almost 30 years ago. I want to turn next to if there is a mens rea requirement on the permission element, as we argue, then the evidence was insufficient to support the trial court's verdict. And it all comes down to really the only evidence that the government has, which is J.A.'s statement that she testified to. It's, I don't think you should be doing that. And that's supposed to be this proof beyond a reasonable doubt that Mr. Hawkins did not know he had permission. So we have to look at that statement. And the first thing I think we need to look at within that statement is the word should. Should connotes usually advice or recommendation. For example, I shouldn't eat ice cream before I go to bed every night, but I do. Why do I do it? I do it because I want to. It's my choice. Just like when somebody says you shouldn't do that, that doesn't necessarily mean that you don't have their permission. And I think this is also the one point in the case where the relationship between the uncle and niece does come into play. Here, should connotes a moral issue. Should I be having sexual relations with my uncle? Should I be having sexual relations with my niece? And in that context, you have to look at that, that, it, it, it, she's using the word should. She's not using do not, no, don't do this, stop. The other element of this statement that I think... But it turns on, on the particular word that's used in this, this very, you know, difficult and, and rapid situation. I don't think it turns exactly on the words. I think it also turns on the conduct of J.A. And I think it's very important that as this relation, sexual contact was escalating, she testifies at ROA, at the Record on Appeal at 163, that she did not object as the massage approached her genital area. And then she also testified that that lasted about three minutes before the actual touching begins. But this is almost like foreplay, an escalation. If you're allowing that to happen, and clearly communicating your consent to that, that happening, you need something more unequivocal to revoke that consent. And saying right before the sexual contact happens, I don't think we should be doing this, or I don't think you should be doing that, that's not enough to communi-, and it might be enough in her subjective state of mind, but it's not enough to communicate to Mr. Hawkins that this escalating sexual situation is suddenly no longer wanted by somebody whose body movements have indicated the entire time that she wants to have this sexual contact. It's important to also notice that there's no force at all used by Mr. Hawkins. And that's important because J.A. has complete freedom of movement this entire time. There's a lot of things she can do to signal to Mr. Hawkins that you shouldn't do, that I don't want you to do this. She could have crossed her legs. She could have yelled at, yelled out. She could have pushed or hit at Mr. Hawkins. And yet there's no defense of wounds on Mr. Hawkins. There's no testimony that any of this ever happened. In considering whether he knew he lacked permission, isn't it a relevant factor that this is incest? Incense, incest is illegal. Incest is, you know, morally repugnant. I mean, he's got to know that, that it's, it's not likely someone's is, niece is going to want to engage in incest with him. Isn't that at least a factor in the mix? I think it cuts, it definitely cuts both ways, Your Honor. I, I think that dynamic should lead somebody to believe that the niece doesn't want to do it. But we also have, this is not a child niece. This is an adult niece. She's 18. And if she's indicating that she wants to have sexual contact and she's going... He's 54. That is true, Your Honor. I agree that he is 54. And he probably should know better. But... You're highlighting that she's not a child. She's 18. But, you know, he's 54. So we got a pretty good age band between the two adults, right? Yes, Your Honor. And I, and I do see, I do see the government's argument where that comes into some consideration. But also it has to come into consideration that with this relationship, with the incest, with the uncle-niece relationship, when somebody asks a question like, should, that's also why it can be interpreted as a moral issue rather than a withdrawal of consent. So there are some ways in which maybe a reasonable person that's 54 shouldn't think that an 18 year old should have permission. But at the same time, when the touching starts to escalate and when the touching is consensual, you need more than this equivocal statement to communicate a withdrawal of consent. And the government needs more than that to prove beyond a reasonable doubt that he knew he did not have permission. And that's a big problem with this child because we know the government and the trial court didn't even think that there had, that there was an element of mens rea on the permission element. So that's why the government's proof is very lacking. There's not even a finding of fact by the trial court right after the trial that Mr. Hawkins knew that he lacked J.A.'s permission. The defense didn't think it was an element either, right? This wasn't raised in the trial court, is that right? Yes, your honor, that is correct. Fortunately, for Mr. Hawkins' appeal, this was a bench trial and his plea of not guilty sufficed as a motion for directed verdict and thus was a failure to realize that this important mens rea requirement was on the permission element. If, I think, if it was at a jury trial, I'd be arguing more plain error here and I feel like even under the plain error standard, we would have it because the evidence is so lacking as to this permission element. Also, well, I'm about to run out of time, your honor, so I will save the rest for rebuttal. Thank you, your honor, for the government. May it please the court. I think, no one's asked me, but I think the best resolution of this case would be to assume without deciding that there's an element that Hawkins must know there's a lack of permission and affirm on the basis that the district court was correct that plenty of evidence supported the assumed element. If you're going to decide the issue that hasn't been decided for thirty years or so, it's one of statutory interpretation based on the words and purpose and the legislative history of the statute. There's one case, it's unpublished, and it's also a district court case, but it's the one case that has analyzed the request in Chapman, the defendants challenged the Ninth Circuit pattern instructions saying that you have to have this mens rea element and the court looked at the legislative it concluded that Congress was aware of the mens rea requirements and didn't set forth those requirements. The intent was to expand the reaches of all the offenses. They're talking about all of the constellation of the offenses, not one particular offense. It was intended to expand the reaches of the offenses and it was intended to be construed broadly, and so the Chapman court reasoned that the Congress intent to focus on defendant's conduct and not on state of mind inquiries. The legislative history shows that Congress wanted to change the focus from the amount of resistance from the defendant. Adding an element as to lack of knowledge would result in additional focus on the victim resistance, as in this case which the committee wanted to avoid. Many, if not most, of state rape cases, Louisiana for instance, are general intent crimes, and Congress was not trying to narrow the scope of the offenses here by adding elements. It wasn't trying to make the federal offenses more narrow than the state offenses. Counsel, you had initially suggested, and of course now getting into the argument, initially suggested we could affirm because of substantial evidence. There are certainly cases that say that, but as we just heard and as you appreciate better than we from your being with this case for a while, the evidence could be seen as equivocal. This is not a jury trial, so it's not a matter the jury is never told by an instruction to find, but the district judge as far as we know is never contemplating the need to make that fact determination. So do these cases that say we can affirm so long as there's substantial evidence, dealing with in those situations where the evidence really is one-sided, as opposed to here where there at least is some argument that could be made that the comments and the other actions by the victim need to be considered long and well before deciding that indicates no permission? Yes, sir. The court did make a finding, a later finding, that there was plenty of evidence. The judge said there was clearly enough evidence that Hawkins knew that there was no permission given. I don't see this as a close case at all. First you have the statement that I don't think you should be doing this, and the moral question, was it equivocal, all was presented to the district court. This isn't a situation of escalating sexual contact. His idea is to massage her midsection because of exercising to get rid of cramps. There's no escalating sexual situation. The second thing is the abruptness of the contact. She testified that right after she made the no permission statement, that's when he immediately went to what she described as what took place over a matter of seconds, the sexual contact. When she says, I don't think you should be doing that, if it's equivocal, he doesn't stop to clarify it. He goes right to what he's doing. As to the purported statements that were made by the victim about encouragement, those were denied by her. The court completely could find her credible and him not credible. There's no conflict between the victim's account and the physical evidence. As far as the vaginal tear we're talking about, page 231, she said it was consistent with a finger pull her story, it was consistent with coarse facial hair. The expert never testified that his explanation was more likely. For me, the intent and knowledge can be inferred from he setting the trap here. He chooses the time early in the morning. He chooses the place, the remote lake area. He chooses the exercises that she does. He's covering up all of this because it shows intent. He says the gym was closed, which is why we went there. The gym wasn't closed. He says we couldn't go to the gym because she didn't have any shoes. That's another story that was a lie. As to credibility, he said she immediately runs away, goes to a strange person in the car, the sergeant, and immediately says my uncle molested me. When he's interviewed, he doesn't say this was consensual. He lies that there was any contact at all. Those lies and incredible stories are indicative that he intended the sexual contact. Then the obvious point, which has already been mentioned, that a 54-year-old uncle would naturally know that he didn't have permission for contact with his 18-year-old niche. Cohen, the only case, and Cohen is more of an assuming without deciding. There's no analysis in Cohen. Cohen said that any airline traveler would naturally know there was no permission for sexual contact with what appeared to be a sleeping passenger. Any 54-year-old uncle would naturally know there's no permission for sexual contact with his niece. I think that there's plenty of evidence. I don't think there's any problem with a failure to make findings. The rules of criminal procedure provide that in a bench trial the judge can just say guilty. If the defendant knows that there's no evidence, he must request findings of fact for the court to be required to make findings of fact before the verdict. It did not happen here. There was no request here. The court's statement of guilty is equivalent to finding the elements beyond the reason for that. Do you agree that the not guilty plea preserved the error? I'm the one who raised that in the brief to begin with. That was my mistake 23 years ago. That was my case. Judge King enlightened me that that's not necessary. I saw a Ninth Circuit case, Edward Lee Sullivan. In a footnote they say, well, it's going to be plain error because they failed to raise it. The case they cite for that is a jury trial where there's a failure to set forth the jury instructions. I think that's wrong. I completely agree that a not guilty verdict is equivalent to a motion for judgment of acquittal. Again, you can't penalize the district court for failing to make findings because they were not requested as part of Rule 23C. What was the context? Because later the district court judge did say the trial record clearly establishes he knew that lack . . . Was there a bond request pending appeal? Release pending appeal, exactly. It was three months after. He's raised this issue in Cohen. He didn't raise it before me, but clearly there was enough evidence . . . which makes a finding that clearly there was enough evidence. My main point on whether there is an element or not is that Congress wasn't trying to narrow these offenses and make them more narrow than state offenses. If you find that Congress is entrusted with the power to make general intent crimes or to dispose of mens rea elements, you can find either expressed or implied in the congressional intent, then you can find that they have the power to do that. Now, if you find that it's ambiguous, then you're into the more set and staples and excitement rationale. Is this like picking up apparently abandoned metal or handling a firearm or handling a package? Those offenses involve contact with something that requires further investigation to determine its illegality. It has a hook of criminality for the unsuspecting. Lack of consent is hardly a hook that would trap the unwary. What's your response to counsel Opposite's arguments relative to the language, should, you know, the should? Uncle Roe, we shouldn't be doing this. In the context of everything I was talking about, it's a signal to stop. If it's not an unambiguous signal to stop, it requires further exploration. It doesn't require no statement from him and immediately engaging in sexual contact. In other words, that's all I have. Thank you. Thank you, Mr. Stilman. Back to you, Mr. Perry, you say rebuttal. Thank you, Your Honor, and just briefly. The first part I want to address is counsel's statement that there were no findings of fact. There were findings of fact. They're in Record Excerpts Number 4. So it does show, these findings show what the trial court found right after the trial, when the testimony was fresh in the trial court's memory. Regarding the bond motion, that occurred three months later, and the trial court didn't even have the benefit of the transcript, because the trial court issued its order on the bond motion on June 17th, but the transcript wasn't even completed until June 24th, and that's in the record. So the trial court, when it's making this additional finding in response to my bond motion, is not in any better position than this court, and I would argue worse, because they don't have the transcript, or the record, and he's just denying a bond motion and saying, no, you're wrong. He did know this. He heard all the testimony. He heard all the testimony. What I'm arguing, though, is that he heard that testimony, but it was three months later, and I just, I think that that needs to come, if he heard the testimony and that was a finding that he thought the testimony led to, why is that not in his original findings of fact? Why does he not make any finding regarding Mr. Hawkins' knowledge? And he doesn't do it until, I mean, a district court has tons of cases, and for three months . . . I think you're out on the edge with that one, counsel. Thank you, Your Honor. I'll move on. No, I mean, if we take three months to decide this case, I don't think we're going to have forgotten the arguments you're making up here at the podium. Just, you know, give us a little more credit to the . . . I just think that it is important to remember that when he issues his findings of fact, all I'll say is when he issues them, he doesn't make a finding as to Mr. Hawkins' mental state, and it's clear he doesn't believe that's an element of the crime. I will say, having done this for a while, this is the first time I ever heard counsel kind of make that argument. I'll take that into consideration. Thank you. Regarding counsel's argument about that the amendments to the statute make it so that we don't want to focus on the victim's conduct at all, I think that there's a slippery slope there. Not with regard to force, and this is a good thing about this case. We're not talking about force at all. We're talking about here whether somebody knew they had permission. So, if a victim subjectively says, he didn't have my permission, but everything the victim did showed that there was permission, how can we ever argue that there was permission unless we look at the victim's conduct? I would just think it's impossible to prove that there was permission unless you analyze what the victim said and what the victim did. What did she do to indicate permission? It's one thing to get a massage when you're out looking out. All kinds of people get massages and give massages or receive them. Versus the genital contact that he then engaged in. Yes. The massage begins, he starts going under the pants line a little bit, and there's never an objection, and she has her hands out to the side. I don't know if there was, that's not going to be an affirmative permission, but it doesn't show that she ever withdrew the permission. Well, Counselor, what of the argument made towards the end of the government's argument that even if the language she used was equivocal, there was a duty on him under rape law to that a somewhat ambiguous, you can't just proceed if you are the perpetrator and later want to argue consent, if there's been a somewhat equivocal but possible rejection of withdrawal of permission? Yes, Your Honor. I believe that if it adds more to the side of a statement that he should have interpreted was equivocal, then I would agree. I think what happened here is he didn't even think it was equivocal at the time because he so interpreted it as a moral question. Because of that, that's why he felt like he had permission to proceed. I know that the trial court gave credibility to J.A.'s version, but he testified it was more of a question, and if you look at the physical evidence, and I'm not going to go over all the physical evidence here, but you'll see that this is much more of a prolonged encounter than she had testified to. Thank you. Thank you, Mr. Perry. You're not a court-appointed, you're retained, right? Yes, I am. Okay. All right. Just want to be sure. Thank you. Thank you, Mr. Delman. All right. We have the case on the briefs and arguments. It'll be submitted. We call the